IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIANE E.,

        Claimant,

      v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

        Respondent.

No. 24 C 4993

Karyn L. Bass Ehler
United States Magistrate Judge

**MEMORANDUM OPINION AND ORDER**

Diane E.[1] ("Claimant") appeals the decision of the Commissioner of Social Security[2] ("Commissioner"), denying her application for disability insurance benefits. For the reasons set forth below, the Court reverses the Commissioner's decision and remands this case for further proceedings consistent with this Memorandum Opinion and Order.[3]

**BACKGROUND**

On January 20, 2021, Claimant filed an application for disability insurance benefits, alleging a disability onset date of August 6, 2020. (R.15). Her application was denied initially and on reconsideration after which Claimant requested a hearing before an administrative law judge ("ALJ"). After conducting a hearing at which Claimant and a vocational expert testified (R.39-69), the ALJ issued his decision on November 1 2023, denying Claimant's application for

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by her first name and the first initial of her last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), he automatically is substituted as the named defendant in this case.

[3] The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 7].

1

disability benefits and concluding she was not disabled under the Social Security Act from her alleged onset date of August 6, 2020 through her date last insured of December 31, 2022. (R.15-33). Claimant filed an appeal with the Appeals Council, which declined to review the ALJ's decision. (R.1-6). Therefore, the ALJ's decision is the final decision of the Commissioner, which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ must determine if: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since her alleged disability onset date of August 6, 2020, through her date last insured, which was December 31, 2022. (R.18). At step two, the ALJ found that Claimant had the following severe impairments: arthralgia with hypermobility; fibromyalgia; and headaches. (R.18-20). At step three, the ALJ found that Claimant did not have an impairment

or combination of impairments that met or equaled a listed impairment. (R.20-22). At step four, the ALJ made the following RFC determination:

> [C]aimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the limitations that follow. The claimant can occasionally lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for six hours per eight-hour workday, and she can sit for six hours per eight-hour workday. The claimant can frequently climb stairs, but she cannot climb ladders. She can frequently balance, stoop, kneel, crouch, and crawl. The claimant cannot be exposed to hazards, such as unprotected heights or dangerous, moving machinery. She can have occasional exposure to loud noises, vibration, and wetness.

(R.22). At step five, the ALJ found that Claimant was capable of performing her past relevant work as a clerk of court and, therefore, was not disabled from August 6, 2020 through December 31, 2022, her date last insured. (R.32-33).

## STANDARD OF REVIEW

The district court reviews an ALJ's decision deferentially and must affirm the decision if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has concluded that an ALJ's decision is "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Though the standard of review is deferential, the court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even if there is adequate evidence in the record to support an ALJ's decision, that decision cannot be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Warnell*, 97 F.4th at 1053.

3

**ANALYSIS**

Claimant asserts two arguments challenging the ALJ's decision, including that (1) the ALJ erred in assessing Claimant's headaches and did not sufficiently accommodate her symptoms in the RFC, and (2) the ALJ failed to address and accommodate her severe pain. For the reasons discussed below, the Court agrees with Claimant that some of the restrictions included in the RFC are not supported by substantial evidence, and therefore, remand is required.

Claimant first argues that the ALJ did not sufficiently account for her headaches and migraines in the RFC, and therefore, remand is required. A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Anna-Marie L. v. Kijakazi*, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022).

At the outset, the ALJ noted that Claimant claims she is unable to work due to migraines and pain all over her body. (R.22). The ALJ then reviewed Claimant's medical records and concluded that "the longitudinal medical evidence of record does not support the claimant's allegations regarding her limitations or degree of symptomology" and that "her statements are not consistent with the medical evidence." (R.27). The ALJ provided multiple reasons why he was not persuaded by Claimant's statements about the alleged severity and frequency of her headaches and migraines. The ALJ noted that Claimant sought limited treatment during the relevant time period at issue and that her testimony about taking her medication was not consistent with the medical records. (R.24). Specifically, the ALJ explained that there is no evidence in the record that Claimant had any office visits with her doctors between September 2019 and December 2020 and

4

during that time, Claimant had prescriptions for Flexeril, Cymbalta, Tramadol, topiramate, and nortriptyline, which she appears to have stopped taking at various points during 2020. (R.24).

The ALJ then noted that Claimant saw her primary care physician in December 2020 and reported that her pain and migraines were stable and she had an unremarkable exam. (R.24). The ALJ also acknowledged that Claimant next had a telehealth visit with her neurologist in January 2021 (who, based on the medical records, she had not seen since November 2018). (R.24). During that appointment, Claimant reported experiencing a migraine once per week and occasionally more frequently, and at that time, she was prescribed Ubrelvy and Emgality. (R.24). Next, the ALJ noted that Claimant saw her rheumatologist in April 2021 for a follow up, but she had not been seen since September 2019. (R.24). The ALJ then explained that subsequent medical records were intermittent, and Claimant reported some improvement during that time. (R.27). Essentially, the ALJ questioned the severity of Claimant's symptoms and complaints of headaches based on her inconsistent treatment and compliance with her migraine medication, and the ALJ also highlighted inconsistencies of Claimant's statements about her daily activities. (R.28-29).

In the Court's view, the ALJ sufficiently explained why he found that the medical records did not support Claimant's allegations and concluded that the frequency, severity, and duration of her symptoms were not as limiting as she alleged, and for these reasons, the Court concludes that the ALJ's findings are supported by substantial evidence. (R.27-29). The ALJ, however, then stated: "Nevertheless, to accommodate any limitations that the claimant may have from her fibromyalgia, hypermobility arthralgia, and migraines, the undersigned has limited the claimant to a range of light work. The undersigned has also provided additional postural and environmental limitations in light of her impairments." (R.29). These environmental limitations include "occasional exposure to loud noises, vibration, and wetness." (R.29). The problem here is that it

is not clear why the ALJ included some of the environmental limitations and where he found support for them in the record.

The ALJ found that the opinions of State agency consultants were "somewhat persuasive," but the ALJ "provided somewhat different postural and environmental limitations in consideration of the claimant's testimony." (R.29). The Court is focused on the environmental limitations specifically. The state agency consultants included environmental restrictions to noise, vibration, fumes, odors, dust, and gases and other hazards, including machinery and heights, but did not include any limitation for exposure to wetness. (R.95, 104). The ALJ, however, did not agree with all these limitations and did not include any limitation for exposure to fumes, odors, dust, and gases. (R.29). The Court notes that the ALJ did not provide any reason or explanation why he rejected the opinions of State agency consultants that included environmental limitations for exposure to fumes, odors, dust, and gases.

While rejecting these environmental limitations, the ALJ instead included a different limitation that the State agency consultants did not. Specifically, the ALJ accepted Claimant's testimony that rainy weather is a trigger for her migraines, and based on that testimony, the ALJ included a limitation in the RFC for occasional exposure to wetness. (R.29). This limitation, however, is not supported by anything in the medical record. Claimant contends that the ALJ's findings are misplaced and that it is well established that rainy weather is "known cause of migraines … due to barometric pressure changes, not actual exposure to wetness." Claimant's Brief [17], at 9. However, there is nothing in the record to support Claimant's argument, and the Court will not speculate. Also, none of the medical experts included any limitation for exposure to wetness in their functional assessments or recognized that exposure to wetness or changes in barometric pressure would have or could have an impact on Claimant's RFC.

6

The bottom line is that there is nothing in the record that supports the ALJ's decision to include an environmental limitation to "occasional exposure to wetness" and why such a limitation would address Claimant's complaint (which the ALJ sems to have accepted without any support in the record) that rainy weather triggers her migraines. Without any evidnce in the record or any medical opinion to support this environmental limitation, the ALJ essentially provided his own assessment of Claimant's complaint and included an environmental limitation to accommodate that complaint without any support in the record. *See Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (holding that an ALJ is not allowed to "play doctor" by using his or her own lay opinions to fill evidentiary gaps in the record). The Court is well aware that an ALJ does not have to rely on any specific medical opinion when making his RFC determination and understands that the ultimate responsibility to formulate an RFC belongs to the ALJ. That said, however, the law also is clear that "an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how [he] has reached [his] conclusions." *Amey v. Astrue*, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012). In short, the ALJ's RFC finding is not supported by substantial evidence. Therefore, remand is required.

Because remand is required for further explanation about what record evidence supports the ALJ's finding that rainy weather is a trigger for Claimant's migraines and how a restriction to "occasional exposure" to wetness would accommodate her limitations, the Court declines to address Claimant's remaining arguments. The Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to do what is necessary to build a suffeicent logical bridge between the evidence in the record and his ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the

7

opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, the Court grants Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [17] and denies the Commissioner's Motion for Summary Judgment [19]. In accordance with the fourth sentence of 42 U.S.C. § 405(g), the Court remands this case to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Karyn L. Bass Ehler
United States Magistrate Judge

Dated: July 7, 2026